[Civil No. 1511.   Filed March 13, 1916.]

[156 Pac. 75.]

## R. R. SCHULTZ, Appellant, v. CITY OF PHOENIX, Appellee.

1. MUNICIPAL CORPORATIONS—CHARTER—LIABILITY—PERSON INJURED IN STREET—REPEAL.—Constitution, article 13, section 2, provides for the adoption of charters, and that if the proposed new charter is ratified by a majority of the qualified electors, and approved by the Governor, it shall become the organic law of such city and supersede any charter then existing, and all ordinances inconsistent with such charter. Civil Code of 1913, title 7, chapter 16, provides the procedure to be followed by a city desiring to frame a new charter, and paragraph 2033 provides that the new charter shall supersede any pre-existing charter, and the preamble to the new charter of the city of Phoenix declared that it was to supersede the former charter, and section 1 thereof gave the city the powers necessary and proper for government, the regulation of its inhabitants, and its local affairs, etc. The former charter (Laws 1885, No. 61, art. 18, § 7) exempted the city from liability for personal injuries resulting from the negligence of its officers and agents. *Held,* that the new charter superseded the old charter, and repealed and abrogated the exemption from liability for personal injury.

2. MUNICIPAL CORPORATIONS—"CHARTER"—LIABILITY.—The "charter" of a corporation is its constitution or organic law giving to it all the powers it possesses, unless other statutes are applicable to it, and

the municipality's liabilities, or exemptions from liability, must be found therein; so that if the corporation in the exercise of any of its powers, or the performance of any of its duties incurs liability *in delicto,* or *in contractu,* whether arising from express legislation or by implication, it cannot escape such liability, unless relieved therefrom by some valid provision of its charter and in a doubtful case a claim of exemption is to be resolved against it.

3. Municipal Corporations — Liabilities — Exemptions — Statutes. Subdivision A, section 1, of chapter 2 of the charter of the city of Phoenix, providing that it shall have all the rights, privileges and immunities belonging to or exercised by a municipal corporation known as "the common council of the city of Phoenix," did not operate to save and continue in force section 7, article 18, No. 61, Laws of 1885, its former charter, expressly exempting the city from liability for personal injury resulting from the negligence of its officers and agents; as to give the provision such meaning would be to declare that the new charter did not supersede the old charter contrary to the express declaration in the preamble of the new charter, and as none of the provisions of the old charter except as specifically set forth in the new charter, were continued as a part of the city's organic law.

4. Municipal Corporations — Constitutional Provisions — Amendment—Reference to Title—"Law."—Under Constitution, article 4, section 14, providing that a law shall not be revised or amended by a mere reference to its title, and making it necessary in the revision or amendment of a law that it be set forth and published in full, and in view of Constitution, article 4, section 1, subdivision 8, authorizing qualified electors of cities to initiate laws, a city charter enacted by voters of a municipality is as much a "law" as if enacted by the legislature and hence subject to the inhibition against revision or amendment of a law by mere reference to the title; so that, if the new charter of the city of Phoenix be viewed as a revision or amendment of the old charter, the failure of the new charter to refer by title or otherwise to article 18, Act No. 61, of Laws of 1885, the former charter, would make any amendment of that article invalid.

[As to constitutionality of code amendment or revision, see note in **86 Am. St. Rep. 267.**]

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Reversed and remanded.

Mr. J. B. Woodward and Mr. I. D. Shamhart, for Appellant.

Mr. George D. Christy, City Attorney, for Appellee.

ROSS, C. J.—An action to recover damages for personal injuries alleged to have been caused by the defendant's negligence on the seventh day of November, 1914. The general demurrer to the complaint was sustained, and, the plaintiff standing upon his complaint, judgment was entered against him, from which he appeals.

It is the contention of the appellee city that it is not liable in an action for damages for personal injury, and to sustain the city's position reliance is had upon section 7, article 18, of Act 61 of the Session Laws of the Legislative Assembly of Arizona of 1885, and the decision of the supreme court construing said section 7 as exempting the city from liability for personal injuries resulting from the negligence of its officers and agents. There have been two of such decisions. *Fifield* v. *Common Council of City of Phoenix*, 4 Ariz. 283, 24 L. R. A. 430, 36 Pac. 916, and *Morrell* v. *City of Phoenix*, 16 Ariz. 511, 147 Pac. 732.

If section 7 of article 18, Act 61, of the Session Laws of 1885, has not been repealed or abrogated, we think the contention of the city attorney is correct, and that the decisions in the Fifield and Morrell cases are determinative of the case. In the Morrell case we said:

"It seems quite certain that it was the intention of the legislature of the territory of Arizona, judging by the language used, that Phoenix should be immune from damages for injuries or loss occasioned by or through the malfeasance, misfeasance or neglect of duty of any of its officers or other authorities. The city received its charter from the territorial legislature in February, 1881 (Laws 1881, No. 58). In 1885 the legislature amended the charter (Laws 1885, No. 61), and one of the sections of the amendatory act was section 7 of article 18, which provides as follows: 'The said corporation shall not be liable to anyone, or for any loss or injury to person or property growing out of, or caused by the malfeasance, misfeasance, or neglect of duty of any officer, or other authorities of said city; or for any injury or damages happening to such person or property on account of the condition of any zanje, sewer, cesspool, street, sidewalk or public ground therein; but this does not exonerate any officer of said city, or any other person, from such liability, when such

*casualty or accident is caused by the* willful neglect of duty enforced upon such officer or person by law, or by the gross negligence or willful misconduct of such officer or person in any other respect.' "

On December 31, 1913, the city of Phoenix adopted a new charter under the provisions of section 2, article 13, of the Constitution of the state. Said section provides that, if the proposed new charter is ratified by a majority of the qualified electors voting thereon, it shall be submitted to the Governor for his approval, and that the Governor shall approve it, if it be not in conflict with the Constitution or the laws of the state. It further provides that:

"Upon such approval said charter shall become the organic law of such city and supersede any charter then existing (and all amendments thereto), and all ordinances inconsistent with said charter."

The statutory law (chapter 16, title 7, Civil Code 1913) provides the procedure to be followed by a city desiring to frame a new charter for its own government, and in paragraph 2033 thereof is incorporated the same language as to the effect of a new charter upon any pre-existing charter of such city. The preamble to the new charter of the city of Phoenix states:

"We, the people of the city of Phoenix, . . . have framed, adopted and ordained, and do hereby frame, adopt and ordain, the following as the charter of said city, which shall supersede, as provided in the Constitution of the state, the charter of the said 'common council of the city of Phoenix,' and all laws amendatory thereof and supplementary thereto."

Section 1 of the charter provides:

"The municipal corporation now existing and known as 'the common council of the city of Phoenix' . . . shall have all the powers necessary, proper or convenient for the government and regulation of its inhabitants and its local affairs, the exercise of which are not forbidden by the Constitution of the United States or the Constitution or laws of the state of Arizona, including those hereinafter enumerated in subsequent chapters of this charter. . . . "

It would seem quite clear from the language of the Constitution and the statutory law that a city adopting a new charter must surrender the old charter, and look solely to

the new charter for its range of action, and that this was fully understood by the inhabitants of Phoenix is evidenced by the preamble of the new charter. The framers of the new charter, in section 1, *supra,* have undertaken to enumerate and limit what things the city of Phoenix may do. It "shall have all the powers necessary, proper or convenient for the government and regulation of its inhabitants and its local affairs, the exercise of which are not forbidden" by the federal or state Constitution or laws of the state "including those hereinafter enumerated." The self-restraint here placed upon the city by its charter is but the announcement of the general rule of law. Dillon on Municipal Corporations, volume 1, section 59, says that the charter of a corporation is its constitution and gives to it all the powers it possesses, unless other statutes are applicable to it. The same author, at section 237, says:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation— not simply convenient, but indispensable. Any fair, reasonable, substantial doubt, concerning the existence of the power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void. Much less can any power be exercised, or any act done, which is forbidden by charter or statute. These principles are of transcendent importance, and lie at the foundation of the law of municipal corporations."

We quote thus largely these propositions of law for the purpose of emphasizing the idea that not only the powers and duties, but also the liabilities or exemptions from liability, of a municipal corporation, must be found in its fundamental law.

The liabilities of a municipal corporation are an incident to, and grow out of, the powers and duties conferred or exacted. It follows that if the corporation, in the exercise of any of its powers or the performance of any of its duties, incurs *in contractu* or *in delicto* any liability, whether it arises from express legislation or by implication, it cannot escape such liability, unless relieved therefrom by some valid provision of its charter. An exemption from a recognized liability could not be claimed unless expressly given—certainly in a doubtful case a claim of exemption should be resolved against the corporation.

The appellee city contends that such exemption from liability for personal injury is contained in subdivision A, section 1, of chapter 2 of the charter, which reads as follows:

"The said corporation, the city of Phoenix: (a) Shall own, possess, control, exercise and enjoy all of the books, records, documents, and all of the property, real, personal and mixed, and all of the rights, privileges, franchises, powers and immunities now belonging to, possessed or exercised by the municipal corporation known as 'The common council of the city of Phoenix.'"

It is said that "the rights, privileges, franchises, powers and immunities" were words used for the purpose of saving and continuing in force section 7, Act No. 61, of the Laws of 1885. We think the position is untenable. If these general words could be given the effect claimed by appellee, we see no reason why they should not be extended to include any or all of the provisions in the old charter of the city. If these words could be given the comprehensive meaning contended for by the appellee, the new charter is not the organic law of the city, and does not supersede the old charter and amendments thereto and ordinances inconsistent therewith. Our opinion is that none of the provisions of the old charter, except such as are specifically set forth in the new charter, were continued as a part of the organic law of the city of Phoenix.

It is the policy declared by the Constitution of Arizona (section 14 of article 4) that a law shall not be revised or amended by a mere reference to its title. It is necessary in a revision of a law that it be set forth and published in full. Qualified electors of cities and towns are authorized to

initiate laws, that power being reserved to them by the Constitution (section 1, subdivision 8, article 4). It is said in *State* v. *City of Portland,* 65 Or. 273, 284, 133 Pac. 62, 66:

"A city charter enacted by the voters of the municipality is as much a law as if it were enacted by the legislature."

It would seem that the application of the inhibition against the revision or amendment of an act or section, to legislation by a city by a mere reference to the title of such act, is as imperative as in the case of legislation by the state. The necessity and reason of this requirement are as great in the one case as in the other. If we could adopt the view that it was not intended that the new charter should supersede any existing charter, but was intended as a revision or amendment of the old charter, still there is lacking in the new charter any reference by title or otherwise to article 18, Act No. 61, of the Laws of 1885, or any section thereof.

The provisions of subdivisions A and B of section 1, *supra,* of the charter, would seem a mere schedule and miscellany usually inserted in the fundamental law of municipalities in the transition or change from one form of government to another, and are used for the purpose of securing accrued and vested rights under pre-existing laws. It is doubtful if the provisions relied upon by appellee add anything to the powers, duties and liabilities minutely and in detail enumerated in the new charter. It is said:

"Neither the repeal of the charter of a municipal corporation, nor a change of its name, nor an increase or diminution of its territory or population, nor a change in its mode of government, nor all of these things combined, will destroy the identity, continuity, or succession of the corporation, if the people and territory reincorporated constituted an integral part of the corporation abolished. The reason is to be found in the peculiar nature of such corporations. A charter for municipal purposes is an investing of the people of a place with the local government thereof, constituting an imperium in imperio, and the corporators and the territory are the essential elements; all else being mere incidents or forms." *O'Connor* v. *City of Memphis,* 6 Lea (74 Tenn.), 730.

The case of *State* v. *Hindley,* 67 Wash. 240, 121 Pac. 447, had its origin in a change of the charter of the city of Spokane. Prior to December, 1910, the charter of Spokane provided for a board of health, and an ordinance created the office of bacteriologist to be appointed by the board of health. Thereafter, in December, 1910, a new special charter was adopted with no provision therein for the retention of the board of health. The provisions of the Constitution of Washington and the laws with reference to the adoption of a new charter are very much like the same provisions of Arizona, and, for that reason, we think the law announced by that court is very persuasive. The court, after reciting the facts, said:

"It follows that, since the new charter was adopted as a new and complete charter, and in no sense as an amendment of the old one, it thereby became the entire organic law of the city, and all the provisions of the old charter were thereby effectually repealed, although we do not find in the new charter any express repealing language directed against the old charter. As bearing more directly upon the contention of appellant, and in support of the view that the position into which he seeks to be reinstated ceased to exist upon the adoption of the new charter, the following authorities may be noted: *People* v. *Blair,* 82 Ill. App. 570, 571; *Ward* v. *Elizabeth City,* 121 N. C. 1, 27 S. E. 993; *Butner* v. *Boifeuillet,* 100 Ga. 743, 28 S. E. 464; *State* v. *Chatfield,* 71 Conn. 104, 40 Atl. 922; *Schmidt* v. *Lewis,* 63 N. J. Eq. 565, 52 Atl. 707."

At the time the appellant received his injuries, November 7, 1914, there was no provision in its charter nor in the general law of the state that exempted the city of Phoenix from liability for injuries or loss occasioned by or through the malfeasance, misfeasance or neglect of duty of any of its officers or other authorities. Upon the adoption and approval of the new charter (December 31, 1913), it became the organic law of the city of Phoenix and superseded the old charter of the city and all amendments thereto. The exemptions from liability as contained in the old charter were not carried forward and retained as a part of the new charter. The appellee city, therefore, was not exempt from liability for the

personal injury received by appellant by virtue of any provision of its charter or any general law of the state.

The demurrer interposed to the complaint was "that it failed to state facts sufficient to constitute a cause of action." On the oral argument and in the briefs, the only question presented was as to whether the city was exempt from liability by virtue of the provisions of its charter, and we accordingly confine our opinion to the decision of that one point.

Judgment reversed and cause remanded.

FRANKLIN and CUNNINGHAM, JJ., concur.